IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| IRENE RAMOS GUERRA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:19-cv-01073-STA-jay |
| ) | |
| TAMER ABUAITA a/k/a ) | |
| TAMER ABU AITA and ) | |
| BARBARA ABUAITA, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a family dispute over ownership in residential property. Defendants Tamer Abuaita a/k/a Tamer Abu Aita and Barbara Abuaita hold title to the property. Plaintiff Irene Ramos Guerra, who is Barbara Abuaita's mother and Tamer Abuaita's mother-in-law, has lived in the home and made most of the monthly mortgage payments on the property for nearly 18 years. Ms. Guerra claims that she took up residence in the home in 2002 and entered into a verbal lease-purchase agreement with her daughter and son-in-law. The Abuaitas claim that Guerra has merely rented the home from them. The Abuaitas now seek judgment as a matter of law on Guerra's equitable claims to the property. Because genuine disputes of material fact remain as to some but not all of the issues, Defendants' Motion for Summary Judgment is **GRANTED in part, DENIED in part**.

## BACKGROUND

Guerra's Complaint alleges that the Abuaitas wanted to give Guerra the opportunity to own her own home. So in July 2002 the Abuaitas proposed that Guerra take over the mortgage

payments for a home they owned at 47 Wakefield Cove, in Jackson, Tennessee. Under the terms of the Abuaitas' proposal, Guerra would pay the Abuaitas the sum of $15,000 and make the regular mortgage payments on the home for the next two years. Guerra fulfilled her part of the bargain. But when Guerra asked her daughter Barbara Abuaita for documentation to confirm her purchase of the property, Mrs. Abuaita failed to take any action. According to Guerra, her son-in-law eventually provided her with a letter dated August 22, 2004, showing that Guerra had satisfactorily performed all the conditions of the sale. According to the Complaint, however, the Abuaitas never took any formal steps to transfer title to Guerra and even refinanced the property without Guerra's knowledge or consent. The Abuaitas have also attempted to the list property with a real estate agent without Guerra's approval or consent.

From these premises, Guerra asks the Court to recognize a resulting trust over the property by virtue of the fact that the Abuaitas continue to hold the property for Guerra's benefit. Guerra further alleges that the Abuaitas' decision to refinance the mortgage on the property converted the resulting trust into a constructive trust. The Abuaitas by their actions have breached their duties as fiduciaries and harmed Guerra's interests. Guerra seeks a declaration that she is the sole owner of the property as well as an award of actual damages, compensatory damages, and punitive damages. Guerra filed her original Complaint for breach of fiduciary duty in the Chancery Court for Madison County, Tennessee on January 23, 2019. The Abuaitas removed the case to federal court on April 12, 2019, based on the amount in controversy and the parties' complete diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The Abuaitas now seek summary judgment on Guerra's claims under Federal Rule of Civil Procedure 56.

To decide the Abuaitas' Motion for Summary Judgment, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of

law.  A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.  Fed. R. Civ. P. 56(c)(1).  Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a).  In support of their Motion, the Abuaitas have filed a statement of undisputed facts, and Guerra has responded.

Based on the parties' submissions, the Court finds that a number of factual disputes exist at this stage of the case.  What is undisputed is that the Abuaitas hold title to the 47 Wakefield Cove property and Guerra has resided in the home since 2002.  The Abuaitas purchased the property in 1999 and then made the decision to move some time in 2001 or 2002.  (Defs.' Statement of Undisputed Fact ¶¶ 2-4.)  The parties disagree about much of what happened after that.  According to the Abuaitas, Guerra approached them about renting the 47 Wakefield Cove property (*Id*. ¶ 5.)  The Abuaitas agreed to rent Guerra the home for $800 a month, an amount equal to the regular monthly mortgage payment and below the fair market rental value of the property. (*Id.* ¶¶ 8, 9.)  Guerra wanted to rent for two years to "get on her feet," and at the end of the two-year term, she would either buy the home from the Abuaitas or the Abuaitas would list the house.  (*Id*. ¶ 11.)  At the end of the initial two-year term of the rental, Guerra asked the

3

Abuaitas to extend the agreement by two years more, a request the Abuaitas granted. (*Id*. ¶ 16.)

Guerra tells a different story. Guerra had been living with the Abuaitas in the house for two months in 2002 when the Abuaitas approached her about purchasing the property. (Pl.'s Resp. in Opp'n 2, ECF No. 24-1.) The Abuaitas suggested what could be called a lease-purchase agreement where Guerra would take over the mortgage payments, taxes, and insurance on the home for two years and make a $15,000 lump sum payment to the Abuaitas. (*Id*. at 3.) At the end of two years, Guerra would own the home. (*Id*.)[1] When Guerra satisfied the terms of the agreement in 2004, she made several requests for something in writing to confirm that she was the owner of the home. (*Id*. at 4.) Guerra eventually received a letter signed by her son-in-law Tamer Abuaita and dated August 22, 2004, that she had completed her end of the bargain. (*Id.*) Guerra has made the one-page letter (ECF No. 24-5) part of the record. However, the Abuaitas contest its validity and claim that they had never seen it before this suit. (Defs.' Statement of Undisputed Fact ¶¶ 30-35.)

The parties also disagree about the course of events over the years that followed Guerra's initial two-year term in the 47 Wakefield Cove property. The Abuaitas have testified that from 2002 to 2011, Guerra made the majority of the mortgage payments on the home. (Defs.' Statement of Undisputed Fact ¶ 17.) Occasionally Guerra needed financial help from the Abuaitas. (*Id.*) By 2011, Guerra was late with nearly all of her payments. (*Id*. ¶ 18.) In an effort to assist Guerra, the Abuaitas agreed to refinance the property so that Guerra's monthly payment would be lower. (*Id*. ¶ 19.) The Abuaitas claim that they acted at Guerra's request and with her consent and deny that they received any personal benefit from the refinance. (*Id*. ¶ 20.) Since 2011 Guerra has continued to make the monthly mortgage payments but again with

---

[1] Guerra also claims the Abuaitas agreed to make major repairs to the home's roof and plumbing system but failed to follow through on their promises. (*Id.*)

periodic help from the Abuaitas. (*Id*. ¶ 24.) Guerra denies that she asked the Abuaitas to refinance the property. (Pl.'s Resp. in Opp'n 4, ECF No. 24-1.) While Guerra admits the refinance had the effect of lowering her payments, Guerra claims she was not consulted about the terms of the loan, including the fact that the new mortgage had a 30-year repayment term and that the bank would automatically draft Guerra's payments from her account. (*Id*.)

Events finally came to a head in 2016. According to the Abuaitas, they had obtained Guerra's consent to place the 47 Wakefield Cove home on the market that year. (*Id*. ¶¶ 26-27.) But sometime after listing the home, Barbara Abuaita had a falling out with Guerra over an inheritance from her father. (*Id.*) Following their disagreement, Guerra refused to allow realtors to show the property. (*Id.* ¶ 28.) Once again, Guerra remembers events differently. Guerra acknowledges that she had discussed selling the home with her daughter on several occasions but always felt as though she had input about the decision to list the property. (*Id.* at 4.) That changed in 2016. Guerra suffered a work-related injury and experienced a loss in income. (*Id*. at 5.) When Guerra could no longer afford the monthly mortgage payments, her daughter simply informed her that the Abuaitas would be selling the property. (*Id.*) Guerra then began to hear from realtors who wanted to schedule times to show the home. (*Id.*) According to Guerra, the Abuaitas had represented to the realtors that they owned the home and Guerra was their renter. (*Id*.) Guerra claims she realized then that the Abuaitas had no intention to honor their agreement to sell her the property. (*Id.*)

The Abuaitas now seek judgment as a matter of law on Guerra's equitable theory that the Court should impose a resulting trust or a constructive trust on the 47 Wakefield Cove property and grant her title to the home. The Abuaitas argue that under Tennessee law a plaintiff seeking such a remedy must prove the facts supporting such a trust with clear and convincing evidence.

5

The Abuaitas cite authority for the proposition that a plaintiff may not prevail on such a theory based only on her own, contradicted testimony about the facts relating to the property. The Abuaitas emphasize that the undisputed proof shows Guerra rented the property from them. The Abuaitas stayed with Guerra in the home whenever they visited her in Jackson and continued to make major repairs to the home, facts which are consistent with their continued ownership of the property and their role as landlord. Guerra cannot show by clear and convincing proof that the parties had an agreement whereby she would own the home. Additionally, the Abuaitas' decision to refinance the mortgage on the property in 2011 in no way suggests fraud or a breach of trust. The Abuaitas acted at Guerra's request and at all times with her knowledge and approval of the transaction. Without proof of some wrongful conduct on the part of the Abuaitas, Guerra cannot show why the Court should create a constructive trust over the property. For each of these reasons, the Abuaitas argue that Guerra cannot carry her burden to obtain equitable relief based on her trust theory.

The Abuaitas argue further that the statute of frauds bars any claims Guerra may have against the Abuaitas to enforce the purported oral contract for the lease-purchase of the home. And the August 22, 2004 letter does not satisfy the statute of frauds. The letter does not evidence a meeting of the minds or any offer and acceptance, all required elements to constitute an enforceable contract. Finally, the Abuaitas argue that any claim Guerrra has against them is now time barred under Tennessee's three-year statute of limitations. In the Abuaitas' view, Guerra's claims accrued in 2004 when Guerra made multiple requests for the Abuaitas to transfer title to her and the Abuaitas refused. In the alternative, the statute of limitations began to run in 2011 when the Abuaitas allegedly refinanced the mortgage on the home for their own gain. At the very latest, the limitations period began to run in 2015 based on Guerra's deposition

testimony that she saw the Abuaitas' "true colors" that year when they moved back to America from Europe. So even if the Court holds that Guerra can establish the elements of her trust claims, the Court should find that the claims are untimely.

Guerra has filed a response in opposition. First, Guerra denies that the Abuaitas are entitled to summary judgment on her resulting and constructive trust claims. Guerra has not only offered her own testimony to contradict the Abuaitas' view that the parties simply had a rental agreement. Guerra has also produced the August 22, 2004, letter as evidence of her agreement with the Abuaitas. Guerra also argues that the family relationship among the parties is relevant to her claim that she is entitled to a constructive trust. Under Tennessee law, a constructive trust may arise where a person uses a position of influence or confidence to obtain legal title to property on more favorable terms than he might otherwise be able to get. As for the Abuaitas' statute of frauds argument, Guerra responds that the statute of frauds does not bar claims for resulting or constructive trusts. Moreover, Guerra contends that the August 22, 2004 letter constitutes admissible proof of the parties' agreement. Lastly, Guerra argues that the three-year statute of limitations does not bar her claims. Because of the trust Guerra had in her daughter, Guerra had no reason to believe in 2004 that the Abuaitas would not honor their agreement to sell her the house. As for the 2011 refinancing, Guerra did not learn of the extended repayment period (a 30-year mortgage loan) until her counsel in this case discovered it. For purposes of the statute of limitations, Guerra argues that her claims did not accrue until 2016 when the Abuaitas allowed realtors to begin showing the home without her consent. Guerra argues then that the Court should deny the Motion for Summary Judgment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

The Abuaitas have raised several discrete issues as grounds for judgment as a matter of law. The Court holds that genuine factual disputes remain and therefore preclude summary

8

judgment in favor of the Abuaitas on all of the issues except for Guerra's constructive trust claim. The Court will now proceed to consider each question in more depth.

### I.     Statute of Limitations

The threshold issue presented in the Abuaitas' Rule 56 Motion is whether the statute of limitations has run on Guerra's claims. The Tennessee Supreme Court has explained that statutes of limitations are "shields, not swords" and reflect "a societal choice that actions must be brought within a certain time period." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (citations omitted). Statutes of limitations under Tennessee law "(1) promote stability in personal and business relationships, (2) give notice to defendants of potential lawsuits, (3) prevent undue delay in filing lawsuits, (4) avoid the uncertainties and burdens inherent in pursuing and defending stale claims, and (5) ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness." *Id.* (internal quotations marks and citations omitted). By enacting statutes of limitations, the Tennessee legislature presumes that "persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Id.* (citations omitted).

As a matter of federal procedural law, a statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). When a party seeks judgment as a matter of law on a statute of limitations, the Court must decide two questions: "(1) whether the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." *Henry v. Norfolk S. Ry. Co.*, 605 F. App'x 508, 510 (6th Cir. 2015) (quoting *Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001)). As the party invoking the statute of limitations, the Abuaitas have the

burden to prove that the statute of limitations has run on Guerra's claims and that no genuine issue of material fact exists as to when the claims accrued. *Id.* If the Abuaitas can discharge their burden to show that the claims are now time barred, the burden shifts to Guerra to prove an exception to the statute of limitations. *Redwing,* 363 S.W.3d at 463–64, 467; *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

Guerra filed suit on January 23, 2019. The Abuaitas argue, and Guerra does not contest the point, that Tennessee's three-year statute of limitations for injuries to real property under Tenn. Code Ann. § 28–3–105(1) applies in this case.[2] Guerra's trust claims are timely under the three-year statute of limitations then only if the causes of action accrued on or after January 23, 2016. If the claims accrued before that date, then Guerra filed suit out of time.

The Court holds that factual disputes remain over when Guerra's equitable trust claims accrued. "Ordinarily, the question of whether a plaintiff knew or should have known that a cause of action existed is a question of fact, inappropriate for summary judgment." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996). In Tennessee, a resulting trust claim accrues when "the trustee does some act hostile to" the beneficiary of the trust. *Fehn v. Schlickling*, 175 S.W.2d 37, 39 (Tenn. Ct. App. 1943). And the limitations period begins to run on a claim for constructive trust "when the wrongful and adverse holding begins and is, or should be, known to the complainant." *Id*.

---

[2] Under Tennessee law, courts decide the correct statute of limitations by looking to the gravamen of the claim, that is, "the legal basis of the claim and . . . the type of injuries for which damages are sought." *McFarland v. Pemberton*, 530 S.W.3d 76, 109 (Tenn. 2017). There is some authority for applying Tennessee's ten-year catch-all statute of limitations to resulting trust claims. *Killebrew v. Ray*, 181 S.W.2d 334, 340 (Tenn. 1944) (citing an earlier version of Tenn. Code Ann. § 28–3–110(a)(3)). In light of Guerra's concession that the three-year statute of limitations applies, however, the Court need not analyze the issue further and will assume for the sake of deciding the Motion that Guerra's claims have a three-year statute of limitations.

Viewing the evidence in a light most favorable to Guerra, her trust claims against the Abuaitas did not ripen until 2016. Guerra has introduced evidence that she had an oral agreement with the Abuaitas for the sale of the 47 Wakefield Cove property in 2002 and that she had satisfied her duties under the agreement by 2004. Guerra obtained a written confirmation of the agreement from Tamer Abuaita in August 2004. Since 2002, Guerra has paid the mortgage, the property tax assessments, and the homeowners insurance premiums on the home, though occasionally she has been able to meet these obligations only with help from the Abuaitas. This state of affairs prevailed for 12 years until Guerra's relationship with the Abuaitas reached a turning point in 2016. According to Guerra, she became disabled as a result of a work injury and experienced a loss of income. Faced with this hardship and relying only on disability support payments, Guerra was no longer able to afford the monthly mortgage on the home.

As Guerra sees it, her worsened financial condition finally prompted the Abuaitas to list the house for sale without consulting Guerra and to advise real estate agents that Guerra was only their tenant. While it is true that Barbara Abuaita had discussed selling the home with Guerra at other times prior to 2016, Guerra testified that her daughter had always consulted her about the possible decision to sell. That was not the case in 2016, when Barbara Abuaita told her mother that "the house is not yours anymore." I. Guerra Dep. 63:11-14, Feb. 24, 2020 (ECF No. 23-9). In sum, the Abuaitas manifested an intent to assert their own undivided interest in the home and sell the property without Guerra's knowing consent in 2016. Under this view of the evidence, Guerra brought her trust claims within the limitations period.

The Abuaitas argue that Guerra should have known that they did not intend to honor the purported agreement to sell her the home as soon as 2004 when they did not transfer title to Guerra or that Guerra should have taken action to vindicate her rights in 2011 when the Abuaitas

11

refinanced the mortgage on the property without disclosing to Guerra all of the new terms of the mortgage. But as the Court has already noted, many of the facts surrounding the events of 2004 and 2011 are disputed and are certainly not so one-sided as to require judgment as a matter of law on the statute of limitations issue.

For example, Tamer Abuaita testified that the parties initially agreed in 2002 to rent Guerra the home for two years and that Guerra would eventually have the opportunity to buy the home. T. Abuaita Dep. 17:13-17, Feb. 20, 2020 (ECF No. 23-11). And Barbara Abuaita testified that at the end of the initial two-year term, she and her husband agreed to give Guerra another two years to prepare to purchase the home. B. Abuaita Dep. 15:12-16:1, Feb. 20, 2020 (ECF No. 23-10). Nothing about this course of dealing in 2004 should have put Guerra on notice that the Abuaitas had no intention of selling her the home. Rather than showing that Guerra should have known she had a claim against the Abuaitas in 2004, the Abuaitas' testimony is actually consistent with Guerra's belief that the parties had reached an understanding for her to become the owner of the home. Similar factual disputes exist over what transpired in 2011. Guerra says the Abuaitas refinanced the property without her consent; the Abuaitas say they refinanced the property at Guerra's request as part of an effort to lower her monthly mortgage payment. In short, the Abuaitas have not carried their burden to prove that the statute of limitations on Guerra's claims accrued prior to January 2016. Therefore, the Motion for Summary Judgment is **DENIED** as to the statute of limitations issue.

### II. Resulting Trust and Constructive Trust

The next issue presented is whether Guerra has adduced enough evidence as a matter of Tennessee law to support the equitable remedies of resulting trust or constructive trust. "Resulting trusts and constructive trusts are both created by courts of equity in order to satisfy

the demands of justice." *Burleson v. McCrary*, 753 S.W.2d 349, 352–53 (Tenn. 1988). Generally speaking, a resulting trust is an equitable doctrine which allows a court to determine whether property rightfully belongs to one who does not actually hold title to it. *Frazier v. Pomeroy*, No. M2005-00911-COA-R3-CV, 2006 WL 3542534, at *12 (Tenn. Ct. App. Dec. 7, 2006) (citing *Wells v. Wells,* 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977)). A constructive trust applies when a party unfairly retains property in bad faith or by means of some fraud. *Roach v. Renfro*, 989 S.W.2d 335, 341 (Tenn. Ct. App. 1998). Because each doctrine is distinct and requires the application of its own legal standards, the Court will consider the proof to support each theory of relief separately.

### A. Resulting Trust

As a matter of equity, a resulting trust is used to "prevent unjust enrichment and protect an individual's equitable right to property when the legal title to that property is in the name of another." *Pomeroy*, 2006 WL 3542534, at *13 (citing *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993)). Put another way, "the owner of the money that pays for the property should be the owner of the property," and a resulting trust protects such an interest. *Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn. Ct. App. 1996) (quoting *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)). Courts of equity recognize resulting trusts in a variety of situations. *Id*. at 353 (citing Restatement (Second) of Trusts § 411 (1959)). In Tennessee, courts typically impose a resulting trust (1) to give full effect to the terms of an express trust that fails for some other reason, (2) to carry out a conveyance from one person who has received consideration from another, a so-called "purchase-money resulting trust," or (3) any other time a trust is "implied by law from the acts and conduct of the parties and the facts and circumstances" surrounding a transaction where the remedy will avoid a "failure of justice."

13

*Pomeroy*, 2006 WL 3542534, at *13 (citing *In re Estate of Nichols*, 856 S.W.2d at 401). In any case the touchstone of a resulting trust is the actual or assumed intent of the parties. *Burleson*, 753 S.W.2d at 352–53.

Viewing the proof in a light most favorable to Guerra and accepting all of her testimony as true, there is enough evidence in the record to justify the creation of a resulting trust. It is undisputed that Guerra has lived in the home continuously since 2002. In fact, there is proof that Guerra had already been living at 47 Wakefield Cove with the Abuaitas for two months in 2002 before the Abuaitas approached her about buying the home. The Abuaitas proposed, and Guerra accepted, the following terms for the purchase: Guerra would pay the Abuaitas the sum of $15,000 and make each of the monthly mortgage payments on the property for two years. At the end of the two-year term, Guerra would become the owner of the home. Guerra testified that she was unsophisticated in business affairs and limited in her English proficiency and that she placed great trust in the Abuaitas to look after her best interests. Guerra also testified that before her daughter and son-in-law made their proposal, Guerra did not believe she was eligible to purchase a home.

Even so, two years passed, and Guerra had lived up to her part of the deal. Defendant Tamer Abuaita, at Guerra's request, prepared and signed a letter dated August 22, 2004, stating the terms of the agreement with Guerra and affirming that she had fulfilled her duties under the agreement. The letter is addressed "Dear Sir or Madam" and ends with a statement about contacting Abuaita "if you have any questions." While it is not clear to the Court why the letter was drafted in this way or what legal effect Tamer Abuaita intended it to have, the writing supports Guerra's claim that the parties had an agreement for the purchase of the home. There is also proof that Guerra periodically received help from the Abuaitas in making the monthly

14

mortgage payments. For most of the time that she has lived in the home, however, Guerra herself has made payments equal to the amount of the mortgage on the property. All of this proof tends to show that the parties intended for Guerra to take ownership of the property after August 2004 and that despite the parties' intentions, the Abuaitas continue to hold title to the home.

And Guerra's proof satisfies her burden to prove the parties' intent with clear and convincing evidence. As Defendants' correctly note, a party seeking a resulting trust over real property must introduce clear and convincing proof of the parties' intent. *Saddler v. Saddler,* 59 S.W.2d 96, 99 (Tenn. Ct. App. 2000) ("When the parol evidence of a resulting trust is in conflict with the terms of a written instrument, it is not essential that the evidence remove all reasonable doubt, but it must be so clear, cogent, and convincing that it overcomes the evidence to the contrary and the presumption that exists in favor of the terms of the written instrument."). Under federal procedural law, a party with the heightened burden to prove a fact with clear and convincing evidence must satisfy that burden in order to survive a motion for summary judgment. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). The Abuaitas argue that even accepting Guerra' version of events, she has failed to prove her case with clear and convincing evidence.

The Court disagrees. It is true that Guerra relies largely on her own testimony about what transpired in 2002 and what the parties intended when the Abuaitas moved out of the house and left Guerra there. But Guerra has adduced a good deal more than her own testimony about the parties' intent in 2002. The August 2004 letter from Defendant Tamer Abuaita corroborates Guerra's story about the Abuaitas' agreement to sell her the home. What is more, there is

15

undisputed proof that Guerra has made the majority of the mortgage payments and paid all of the property taxes and homeowner's insurance on the house since 2002. And since 2011, Guerra has paid the mortgage by automatic bank draft directly to the bank. All of the evidence, circumstantial as it is, supports Guerra's claim that she was not merely a renter and that Defendants intended to convey her an ownership interest in the home. Accepting these facts as true, the Court concludes that Plaintiff has demonstrated her entitlement to a resulting trust by clear and convincing evidence.

To avoid this result, the Abuaitas raise a number of additional arguments, all of which go to the weight or credibility of the evidence and are therefore questions the Court cannot decide as a matter of law under Rule 56. The Abuaitas contest the validity of the August 2004 letter and have testified that they had never seen the letter before it was produced in this lawsuit, implying that the letter is a forgery. However, "whether [a writing] is a forgery is a question of fact," which obviously the Court cannot resolve on a motion for summary judgment. *Smith v. Weers*, 2018 WL 2087122 at *3, n.1 (6th Cir. Jan. 2, 2018) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (internal citations omitted)). Likewise, the Abuaitas point to other circumstantial evidence about Guerra's recurring need for financial help in meeting her expenses at the home and the fact that the Abuaitas stayed with Guerra in the home whenever they visited Jackson. The Abuaitas argue that these facts suggest that they continued to exercise control over the property and used it whenever they chose to do so. But this proof is ambiguous at best. The Abuaitas' willingness to assist Guerra financially and their decision to stay with her during visits to Tennessee is just as consistent with normal incidents of family life. These facts, viewed in a light favorable to Guerra, shed little light on whether the parties had an agreement or whether the Abuaitas continued to treat the home as their property, and not Guerra's. In sum, the Court

concludes that triable issues remain over Guerra's claim for a resulting trust. Therefore, the Abuaitas' Motion for Summary Judgment must be **DENIED** on this issue.

### B. Constructive Trust

As an alternative to her prayer for a resulting trust, Guerra alleges that the refinancing on the 47 Wakefield Cover property "in 2011 converted the resulting trust to a constructive trust," presumably because the Abuaitas proceeded with the refinancing without Guerra's full consent to all of the terms of the loan. Compl. ¶ 30 (ECF No. 1-2). Guerra also alleges that the Abuaitas breached their duties under the constructive trust by attempting to list the home without her consent. Like a resulting trust, a constructive trust denies a property holder the continued possession of the property if the property holder has an equitable duty to convey the property to another. *Giles Cnty. v. First U.S. Corp.*, 445 S.W.2d 157, 165 (Tenn. 1969) (Creson, J., dissenting) (citing *Scott on Trusts*, p. 3103 (2d Ed.—1956)). Unlike a resulting trust, a court does not focus on the intentions of the parties, *Burleson*, 753 S.W.2d at 352–53, but rather on whether one party has engaged in fraud or some other bad faith conduct to deny possession of the property to its rightful owner.

For example, a constructive trust may arise where "a person (1) obtains legal title to property in violation of some duty owed the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits." *Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007) (citing *Tanner v. Tanner,* 698 S.W.2d 342, 345–46 (Tenn. 1985)). The common theme in each of these scenarios is some element of "fraud, actual or constructive, . . . duress or abuse of confidence, . . .

commission of wrong, or . . . any form of unconscionable conduct, artifice, concealment, or questionable means . . . ." *Sanders v. Forcum-Lannom, Inc.*, 475 S.W.2d 172, 174 (Tenn. 1972) (citing *Covert v. Nashville, C. & St. L. Railway*, 208 S.W.2d 1008 (Tenn. 1948)).

The Court holds that Guerra has not carried her burden to present clear and convincing proof of the Abuaitas' bad intent to deprive her of her rights in the property. Guerra's constructive trust theory is not entirely clear to the Court. She seems to argue that a constructive trust arose after the Abuaitas refinanced the mortgage on the property in 2011 and that the Abuaitas' attempt to sell the property without her consent in 2016 further evidenced their fraudulent scheme. Whatever her theory may be, Guerra has not cited clear and convincing evidence at this stage of the case to show that the Abuaitas acted with the requisite intent to defraud her of her ownership interest in the home. Rather the proof suggests that the parties had a dispute over whether Guerra should continue to live in the house at a time when it seemed she could no longer afford it. None of this evidence clearly and convincingly shows that the Abuaitas acted with fraudulent intent to deprive Guerra of her interest in the property. Therefore, the Abuaitas' Motion for Summary Judgment is **GRANTED** as to Guerra's claim for a constructive trust.

### III. Statute of Frauds

The Abuaitas finally argue that the statute of frauds precludes Guerra's equitable claims for ownership of the property. Tennessee's statute of frauds requires that any contract for the sale of land be in writing and signed by the party against whom enforcement is sought. Tenn. Code Ann. § 29–2–101(a)(4); *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012) ("The Statute of Frauds precludes actions to enforce certain types of parol contracts unless the action is supported by written evidence of the parties' agreement."). But as the Abuaitas concede, a

resulting trust is an exception to the statute of frauds under Tennessee law. *Harris v. Smith*, No. E2019-00906-COA-R3-CV, 2020 WL 1893640, at *4 (Tenn. Ct. App. Apr. 16, 2020) (citing *Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn. Ct. App. 1980)). Therefore, the Abuaitas' Motion for Summary Judgment must be **DENIED** as to the statute of frauds issue.

## CONCLUSION

The Abuaitas have not carried their burden to show that Guerra's claims are untimely. The Court holds that genuine issues of fact remain on Guerra's resulting trust claim and that Guerra has not come forward with clear and convincing evidence to support her constructive trust claim. Therefore, the Abuaitas' Motion for Summary is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 29, 2020.